IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2025 Session

## THOMAS J. TABOR, JR., ESQ. v. GLORIA JUANITA MILTON

**Appeal from the Circuit Court for Claiborne County**
**No. 21-CV-2259     D. Kelly Thomas, Jr., Senior Judge**

_____

**No. E2024-01918-COA-R3-CV**
_____

Gloria Juanita Milton ("Milton") hired attorney Thomas J. Tabor, Jr. ("Tabor") to defend her as an appellee in *Milton v. Powell*. After successfully defending her in the appeal, a disagreement arose between Tabor and Milton over the attorney's fees she owed him. Tabor filed a complaint in the General Sessions Court for Claiborne County ("the General Sessions Court"), which found that Milton owed Tabor $10,030 in unpaid attorney's fees. Milton appealed to the Circuit Court for Claiborne County ("the Trial Court"), which came to a different conclusion than the General Sessions Court. The Trial Court determined that any remaining amount owed by Milton above and beyond what she already had paid was excessive and unreasonable. Tabor appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

W. William Brooks, Tazewell, Tennessee, for the appellant, Thomas J. Tabor, Jr.

Michael R. Franz, Knoxville, Tennessee, for the appellee, Gloria Juanita Milton.

## OPINION

## Background

In April 2021, Tabor filed a complaint for breach of contract against Milton in the General Sessions Court. Tabor alleged that Milton and he had entered into a retainer agreement, in which Milton agreed to pay Tabor an initial retainer of $15,000 for the first sixty hours of work with additional time to be billed at an hourly rate of $250 per hour. Tabor successfully defended Milton in an appeal to this Court in *Milton v. Powell*, No. E2018-01904-COA-R3-CV, 2019 WL 4861490 (Tenn. Ct. App. Oct. 2, 2019).

Tabor alleged that Milton had not made any payments since May 2020; still owed $8,423; and breached her contract with Tabor. Tabor filed an attorney's lien on Milton's property and alleged that he had incurred an additional $3,001 in legal fees and expenses in trying to obtain collection of the lien amount of $8,423. He requested the General Sessions Court award him a total of $11,435.

Tabor included as an exhibit the affidavit of Barbara Ernst, the keeper of his financial records. Ernst stated that as of August 2020, Milton had been billed $21,050 in attorney's fees, of which she still owed $8,423. Ernst also stated that Milton received a credit for $2,500 for which there was no receipt. Milton did not produce a copy of the check to prove the $2,500 had been paid.

After trial, the General Sessions Court entered a judgment awarding Tabor $10,030. Milton appealed to the Trial Court. Judge John D. McAfee recused himself, and Chief Justic Holly Kirby appointed Judge D. Kelly Thomas, Jr. to preside over the case.

Milton filed a brief in the Trial Court arguing that Tabor was not involved in the underlying trial court proceedings in *Milton v. Powell* and represented her only for the purposes of defending her in the opposing party's appeal. She claimed his role was limited to the preparation of one appellate brief and participation in oral argument in this Court. Despite the limited nature of his representation, Milton alleged that Tabor had billed her more than $23,000 and sought additional attorney's fees associated with attempting to collect her remaining balance.

Milton argued that the Trial Court should find that she should owe no more than $15,200, an amount she already had paid. She argued that Tabor

> (1) billed an excessive number of hours for the preparation of the appellee's brief on behalf of Ms. Milton, (2) billed for work which was unnecessary or futile, including work performed after Ms. Milton had already prevailed on her appeal and the case was concluded, (3) improperly billed for

- 2 -

administrative and secretarial tasks at an attorney billing rate, (4) improperly billed at an attorney billing rate for tasks actually performed by a legal assistant, (5) improperly billed for Mr. Tabor's (or his staff's) review of his own internal billing and financial records (records which turned out to be inaccurate, as they failed to give Ms. Milton credit for all payments made to Mr. Tabor), and (6) generally billed excessive amounts of time for basic tasks.

Tabor argued in his brief that Milton failed to pay the $15,000 retainer in a timely manner. He also argued that Milton had failed to fully compensate her trial lawyer, noting that her previous counsel filed a lawsuit against her in Anderson County for payment of legal fees in the amount of $13,425. Tabor submitted a settlement offer to her trial lawyer, which was accepted. He also argued that there were many instances in which he did not bill Milton for his time. He acknowledged that Milton had presented satisfactory proof in the General Sessions Court that she had actually paid the $2,500 that Tabor thought had been mistakenly credited to her account.

Trial was held in July 2024. The Trial Court entered a judgment, finding that any amount above the $15,200 Milton already paid was excessive for the work conducted by Tabor. The Trial Court explained:

> Regarding the first RPC 1.5 factor, the *Powell v. Milton* appeal that Ms. Milton hired Mr. Tabor to defend involved a relatively simple and straight forward property boundary line dispute. Mr. Tabor's work on the case consisted mainly of preparing the appellate brief and orally arguing the case. There were no novel or complicated legal issues in the appeal. Both sides generally agreed that the governing law was well-established, primarily citing and relying upon two appellate opinions, as did the *Powell* Court deciding the case. *Powell v. Milton* was not a difficult or overly time-consuming case.

> The body of the appellate brief drafted and filed by Mr. Tabor is sixteen pages long. Approximately four of those pages consist of block quotes from legal authorities and the trial transcript. Mr. Tabor billed Ms. Milton for 41.6 hours of time, a total of $10,400, for this brief. The total amount of his bill for defending the appeal was $21,050 for 84.2 hours worked, plus an additional $73.63 in costs.

> At trial, Mr. Tabor readily admitted that he made some billing errors, including failing to give Ms. Milton due credit for some payments, charging time at an attorney's rate when it should have been at a lower assistant's rate, and some overbilling.

- 3 -

Regarding RPC 1.5(a) factor (2), there was no proof presented that the scope of the representation of Ms. Milton precluded Mr. Tabor from accepting other employment. Regarding factor (3), the fee customarily charged in the area for similar legal services, there was no particular proof on this, but the Court finds that Mr. Tabor's rate of $250 per hour is not unreasonable or out of line with customary attorney's fees for the area. Applying factor (4), the Court notes that the property at issue in [*Powell*] *v. Milton* was 0.46 acre, not a large amount of land or a high monetary value. However, Mr. Tabor obtained a favorable result for Ms. Milton in that the Court of Appeals affirmed the trial court's decision in her favor.

There was no particular proof at trial addressing or pertaining to factors (5), (6), (7), or (9) to support Mr. Tabor's claim that the fee sought is reasonable. As already noted, the fee agreement was in writing and did not provide for a contingent fee.

Having reviewed the pleadings and evidence in consideration of the RPC 1.5(a) factors, the Court is of the opinion that anything above the $15,200 already paid by Ms. Milton in accordance with the retainer agreement would be unreasonable and excessive. Mr. Tabor's request for additional fees is denied. In light of the circumstances and because Mr. Tabor is not the prevailing party on this appeal, his request for his attorney's fees is denied, and each side shall pay their own attorney's fees. Costs of this action are assessed to Plaintiff/Appellee Thomas J. Tabor, Jr.

Tabor filed a notice of appeal.[1]

## **Discussion**

Although not stated exactly as such, Tabor raises one issue on appeal: whether the Trial Court abused its discretion in finding his requested attorney's fees unreasonable by erroneously assessing the evidence and reaching an illogical conclusion. Upon our review, we affirm.

Our Supreme Court has previously explained the standard of review as follows:

The trial court's determination of a reasonable attorney's fee is "a subjective judgment based on evidence and the experience of the trier of facts," and Tennessee has "no fixed mathematical rule" for determining what a reasonable fee is. Accordingly, a determination of attorney's fees is

---

[1] This Court entered an order finding that the Trial Court did not comply with Tennessee Rule of Civil Procedure 58 in entering its judgment. The Trial Court subsequently entered a corrected judgment.

- 4 -

within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, and we will find an abuse of discretion only if the court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party."

*Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (citations omitted).

Rule 1.5(a) of the Rules of Professional Conduct provides the following factors for courts to consider when determining the reasonableness of an attorney's fee:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;

(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) whether the fee agreement is in writing.

Tenn. Sup. Ct. R. 8, RPC 1.5(a).

Regarding factor (1), "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," the Trial

Court found that the appeal was a "relatively simple and straightforward property boundary line dispute," that there were no novel or complicated legal issues involved, that the governing law was well-established, that the appeal was not difficult or overly time-consuming, and that the appellate brief was only sixteen pages in substance. Tabor does not dispute these findings on appeal, and we find no error in the Trial Court's characterization of the appeal.

Tabor wrote one appellate brief, the substance of which was only sixteen pages long. Of those sixteen substantive pages, three to four pages consisted of long block quotes from case law or the trial transcript. There were two issues on appeal, each based on a prior Tennessee Court of Appeals decision. The crux of the appeal was whether the Chancery Court for Campbell County properly applied the guiding principles for surveyors as outlined in well-established case law.

Tabor primarily argues that the Trial Court erred by failing to consider his pre- and post-appeal work that he completed for Milton. However, there is no indication that the Trial Court failed to consider Tabor's pre- and post-appeal work. Tabor's pre- and post-appeal work was reflected in the timesheet presented as an exhibit and heavily discussed at trial. There is no indication that the Trial Court reduced any of the time billed for this type of work. The Trial Court correctly noted that Tabor's work mainly consisted of preparing the appellate brief and orally arguing the case. Tabor spent 41.6 hours writing a sixteen-page brief, roughly half of the entire 84.2 hours billed to Milton. This means Tabor billed Milton over $10,000 for the preparation of this one appellate brief. Based on the language of the judgment, the Trial Court appears to have reduced the fee in part due to what the Trial Court found as excessive time spent on the appellate brief, rather than the time billed for pre- and post-appeal work.

The Trial Court also considered Tabor's billing errors, which included overbilling, failing to give Milton credit for some payments, and charging her at an attorney's rate for work that should have been billed at a lower assistant's rate. For instance, Tabor billed Milton at his rate of $250 per hour for the following administrative tasks: (1) one half hour for filling out Milton's address information for the appeal; (2) one hour for drafting a cover letter to Milton with a copy of the notice of substitution of counsel; (3) one hour for drafting a letter to Milton with a copy of the court reporter's invoice; (4) one half hour for a billing statement drafted by a secretary; (5) one half hour for forwarding Milton a court reporter's bill; (6) one half hour for mailing a check to a court reporter on Milton's behalf; (7) one half hour for another billing statement drafted by a secretary; (8) one half hour for another billing statement drafted by a secretary; (9) one half hour for another billing statement drafted by a secretary; and (10) eight tenths of an hour for another billing statement drafted by a secretary. Tabor clearly overbilled Milton. Billing a client at the attorney's hourly rate for the time spent to mail a billing statement and receipt every time the client makes a payment is a particularly troubling practice. The evidence does not preponderate against the Trial Court's findings as to this factor and to the rest of

the Trial Court's findings as well. We, accordingly, conclude that the Trial Court properly considered the first factor in discounting administrative tasks and the excessive number of hours Tabor spent on the appellate brief.

As for factor (2), "the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer," the Trial Court found that there was no proof that Tabor's representation of Milton precluded him from accepting other employment. Tabor argues that the Trial Court erred in its analysis of this factor, stating that although "there was no specific evidence as to how much employment was lost due to his twenty-two-month long representation of Ms. Milton, there is still inherently employment opportunities lost when working on a case." Yes, opportunity costs abound in the practice of law as well as virtually every other facet of life. A lawyer's decision to accept a client's case invariably means he or she will have less time to dedicate to other cases. If we were to follow the logic of Tabor's argument, this factor would always weigh in favor of the reasonableness of fees, and an attorney would never have to present any specific proof for this factor. We, however, decline to interpret the language of factor (2) so broadly as to encompass every case, no matter how big or small, simple or complex, notorious or common, without specific proof of how taking that case actually impacted a lawyer's ability to work on other cases. Here, there was nothing in the record demonstrating that this case likely would preclude Tabor from accepting other employment opportunities. *See Lowe v. Johnson Cnty.*, No. 03A01-9309-CH-00321, 1995 WL 306166, at *3 (Tenn. Ct. App. May 19, 1995) ("This is not a case where an attorney undertakes the representation of a notorious, unpopular individual, and thereby foregoes an opportunity to attract other clients because of the unpopular client. This also is not a case where a client can recognize that the client's representation will cause the lawyer to be 'conflicted out' of other representations.").

Tabor's substantive work on Milton's case can be broken down into a few categories: (1) writing a response to a motion to stay the judgment pending appeal; (2) writing an appellate brief and arguing the brief to this Court; and (3) writing various post-appeal motions, such as a motion for an order awarding discretionary costs or a motion for an order to enforce the judgment. Tabor had no trial to prepare for and try, he had no depositions to take, and he had no discovery to pursue. Furthermore, there was no evidence Milton was a notorious, unpopular person who would detract from Tabor's business, or that Tabor would be conflicted out of other representations as described in *Lowe v. Johnson Cnty*. *See id.* We are unable to conclude that Tabor's work in this case was so obviously time-consuming such that Milton should have known her case would diminish Tabor's ability to pursue other employment opportunities.

Tabor also argues that the Trial Court erroneously assessed the evidence related to factor (4), "the amount involved and the results obtained." The Trial Court found that the property at issue in the underlying case, *Milton v. Powell*, involved only 0.46 of an acre. The Trial Court also acknowledged that Tabor obtained a favorable result for Milton on

appeal. Tabor acknowledges that the Trial Court's findings were correct but argues that the Trial Court failed to consider how "clearly very important" the underlying case was to Milton. Again, Tabor presents an argument that could apply to virtually every case given that every legal dispute is important to the parties involved by virtue of the fact that the parties are willing to spend time and money to litigate the issue. Tabor has failed to demonstrate how the Trial Court erroneously weighed the evidence related to this factor.

The Trial Court found that there was no particular proof at trial pertaining to factors (5), (6), (7), or (9). On appeal, Tabor disagrees. With respect to factor (5), "the time limitations imposed by the client or by the circumstances," Tabor argues the following:

> At the onset of the representation agreement, on November 5th, 2018, [t]he Powells' attorney had filed a Notice of Appeal to the Court of Appeals, filed a pending motion in the Campbell Chancery Court, and her former Attorney had filed a Motion to Withdraw. Ms. Milton testified she only had a few days to get an attorney at the time. . . . Mr. Tabor had very little time to familiarize himself with the case, file motions and prepare himself for court on November 14, 2018. Furthermore, once a Notice of Appeal is filed, deadlines are immediately to put into place. And there was testimony from Mr. Tabor and Ms. Erns[t] regarding the client as "demanding."

Although Tabor may have had a tight deadline to respond to the opposing party's motion to stay the judgment pending appeal, the timesheet entered into evidence demonstrates that Tabor drafted a two-page response to the motion the day after he became Milton's lawyer, and this task, in conjunction with other tasks, took only two and a half hours. This was a task tangential to the reason he was hired—to defend her in the appeal.

Tabor's argument that he was operating under time limitations because of the schedule of briefing deadlines imposed by the Tennessee Rules of Appellate Procedure is also unavailing. It is not unusual for a trial attorney to hand off his client's case to a different attorney for the appeal. Therefore, many appellate attorneys are unfamiliar with the trial court proceedings until the trial record is provided and appellate deadlines are set. Moreover, the time limitations for appeals are not overly stringent, and extensions are granted with some frequency. In fact, Tabor was granted an extension for the appellate brief in *Milton v. Powell*. Tabor also argues that Milton was a demanding client, but he does not explain how this imposed or impacted time limitations on his work. We discern no abuse of discretion in the Trial Court's application of these findings related to this factor.

With respect to factor (6), "the nature and length of the professional relationship with the client," Tabor argues that the Trial Court did not account for his twenty-two-month's long representation of Milton or the fact that Milton had previously worked as a

paralegal at a law firm with Tabor. However, Tabor does not explain the significance of these facts or how they would weigh in favor of his requested fees. In fact, we have found at least one case in which this Court concluded that a "preexisting, ongoing professional relationship, such as a retainer relationship between a business and an attorney or a relationship between an insurance company and its regular defense counsel, can militate, in some circumstances, for a lesser fee than would be reasonable for a one-time representation for the same legal work." *Lowe*, 1995 WL 306166, at *3 (footnote omitted). Therefore, even if the Trial Court erred by considering the few facts relevant to this factor, Tabor fails to demonstrate how this factor would operate in favor of the reasonableness of his fee.

Concerning factor (7), "the experience, reputation, and ability of the lawyer or lawyers performing the services," Tabor argues he had a positive reputation and ability to perform the work because Milton decided to hire him on short notice after her trial lawyer withdrew because she had worked with him before. Tabor does not adequately explain how Milton's decision to hire him demonstrates that he has a positive reputation. Again, Tabor has made an argument that could apply to any case. Simply because a client has hired an attorney does not mean the client hired that attorney because of his reputation. Although Milton stated she hired him because she had worked with him before at a law firm, she provided no specific information about his reputation. Tabor fails to cite specific testimony or evidence related to his reputation.

Lastly, Tabor does not present a specific argument as to factor (9), "prior advertisements or statements by the lawyer with respect to the fees the lawyer charges." He points to no specific testimony or evidence pertaining to this factor, and we likewise have found none, with the exception of the written retainer agreement which the Trial Court considered in relation to factor (10).

Based upon our review, we discern no abuse of discretion in either the Trial Court's consideration of the RPC 1.5 reasonableness factors, or the Trial Court's conclusion that "anything above the $15,200 already paid by Ms. Milton in accordance with the retainer agreement would be unreasonable and excessive." In doing so, we emphasize that there is no fixed mathematical equation to determine whether an attorney's fee is reasonable or unreasonable. In considering the record in this case, we conclude there was no abuse of discretion by the Trial Court and, therefore, no reversible error.

## Conclusion

For the foregoing reasons, we affirm the Trial Court's judgment.  We remand for collection of costs below.  Costs of the appeal are taxed to the appellant, Thomas J. Tabor, Jr., and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE